IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW R. PERRONG
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

    Plaintiff

v.

RAMY KHALIL
1808 DOVER RD.
SOUTHAMPTON, PA 18966,

AND

JIHAN GHANIM
32 CONSHOHOCKEN STATE RD APT F3
BALA CYNWYD, PA 19004

    Defendants.

Case No.

JURY TRIAL DEMANDED

## COMPLAINT

### Preliminary Statement

1. Plaintiff Andrew R. Perrong ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Plaintiff alleges that Ramy Khalil and his wife, Jihan Ghanim, commissioned a series of automated illegal telemarketing "robocalls" to originate new customers by sending calls to telephone numbers listed on the National Do Not Call Registry and for which the called party is charged for the calls, like Mr. Perrong's number, which is prohibited by the TCPA. The calls were made either directly by Khalil, Ghanim or their agents for their fictitiously named

1

unregistered DBA "We Buy Any Philly Home" and at the supervision, direction, and control of Khalil and Ghanim.

3. The Plaintiff never consented to receive such calls, which were placed to him for telemarketing purposes.

## Parties

4. Plaintiff Andrew R. Perrong is a Pennsylvania resident, and a resident of this District.

5. Defendant Ramy Khalil is domiciled and resides at 1808 Dover Rd. Southampton, PA 18966, which lies within this District.

6. Defendant Jihan Ghanim is domiciled and resides at 32 Conshohocken State Rd. Apt. F3 Bala Cynwyd, PA 19004, which lies within this District.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendants are residents of this District.

## The Telephone Consumer Protection Act

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## The TCPA Prohibits all Automated Calls To Protected Numbers

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Perrong's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded telephone calls onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient.

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch

systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013).

15. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes telemarketing calls. *See* FCC Enforcement Advisory: *Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

The National Do Not Call Registry

16. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

18. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

19. Defendants are real estate investors, commonly referred to as "house flippers," who buy and sell properties throughout the greater Philadelphia area.

20. Defendants use telemarketing to solicit potential customers and/or victims to sell their homes to them, or to purchase homes from them.

21. Defendants are not registered as telemarketers with the Attorney General of Pennsylvania. In fact, Defendants, who do business under the name "We Buy Any Philly Home," are not registered in any capacity to do business under that name.

22. One of the strategies used by Defendants involves the use of automated calls.

23. Defendants send out these call blasts *en masse* to telephone numbers throughout the area, hoping they reach someone interested in buying or selling their property.

### The Calls to Mr. Perrong

24. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

25. Plaintiff's telephone number (the "Number"), 215-947-XXXX, is on the National Do Not Call Registry and has been continuously since 2005.

26. Despite this, the Defendants placed at least four telemarketing calls to Plaintiff on June 29, October 5, and October 6, 2021.

27. The Number is assigned to a Voice over Internet Protocol (VoIP) telephone service, which allows for voice calls to be placed over a broadband Internet connection.

28. That Number, which is assigned to a VoIP telephone service, is charged for each call it receives.

29. The VoIP telephone service for the Number is Anveo.

30. The service charges a ring charge of $0.005 for the provision of Caller ID Name lookup information for each call placed to the Number, even if the call is not answered.

31. The service also charges a per-minute charge of $0.004 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to the Number.

32. The Number is therefore "assigned to a . . . service for which the called party is charged for the call" and any call placed to that number are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

33. On June 29, 2021 at 3:01 PM, the Plaintiff received a call from the Defendants with the caller ID 267-682-7814.

34. The telephone service provider for this telephone number is Twilio.

35. When Plaintiff answered the call, there was a brief delay, silence, and an audible "click" when the caller on the other side came onto the line.

36. The caller on that call, "Natalie," began to pitch the Plaintiff on Defendants' real estate services. Notably, the caller attempted to conceal their identity by claiming that her "boss" was the fictitiously-named "David Beckatini."

37. The Plaintiff was working when he received the call, advised the caller the same, and stated that he would call back only if he was interested.

38. Despite that, and the fact that he was on the National Do Not Call Registry, the Defendants made another telemarketing call to the Plaintiff.

39. On June 29, 2021 at 8:10 PM, the Plaintiff received a call from the caller ID 267-780-9049. The Plaintiff was not available, and the caller was sent to voicemail, but no message was left. The name on the caller ID read "RAMY KHALIL."

40. A search of TransUnion's TLOxp database, however, uncovered that the 267-780-9049 number is registered to Defendant Ganim.

41. On October 5, 2021 at 11:50 AM, the Plaintiff received yet another call from Defendants, this time from the caller ID 267-627-6350.

42. The telephone service provider for this telephone number is Twilio.

43. When Plaintiff answered the call, there was a brief delay, silence, and an audible "click" when the caller on the other side came onto the line. Moreover, the call began which choppy audio, which is usually the result of an overloaded internet connection in an automated call center.

44. This time, the caller on the call, "Melanie," again tried to pitch the Plaintiff on Defendants' real estate services. Again, the caller claimed that her "boss" was a "private real estate investor in Philly" named "David."

45. The Plaintiff instructed "Melanie" not to call him again.

46. Despite this clear instruction not to be called, as well as the previous lack of interest, on October 6, 2021 at 11:07 AM, the Plaintiff received a call from the caller ID 267-780-9049.

47. This time, Defendant Khalil left a message regarding investment in real estate services.

48. The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

49. The system(s) Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have the Plaintiff answer it, and only then connect it to a human being.

50. Furthermore, audible pauses, clicks, and choppy audio are hallmark indicia of ATDS systems. It supports the inference that Defendants used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list." *Facebook*, 141 S. Ct. at 1171 n.7.

51. At least two of the calls were placed from numbers serviced by the company Twilio. Twilio's website boasts the ability to make calls with "indefinite scaling," support up to 250 participants at a time, and mask caller information. *See Voice With the Power of Programmability*, TWILIO, https://www.twilio.com/voice [https://archive.ph/ktY0A].

52. Indeed, Twilio's documentation outlines in detail the computer programming code necessary to make automated calls from a list at a rate of one call per second, in addition to the code needed in order to tell the system what action to take depending on if a party answers. *See Making Calls*, TWILIO DOCS, https://www.twilio.com/docs/voice/make-calls [https://archive.ph/kVbSz].

53. The fact that the calls from 267-780-9049 transmitted inaccurate Caller ID Name information that did not match the subscriber of record supports the inference that they were also placed using an ATDS. It follows that if the dialer has the capacity to store or produce random numbers to transmit a caller ID, it also has the capacity to store or produce random telephone numbers to be dialed, especially because the equipment needed to manipulate a caller ID to display a different name from the subscriber is far more sophisticated than the equipment needed to place a call to a random telephone number.

54. As this Court has remarked, other courts have held, post-*Facebook*, that allegations similar to those as here of the absence of a relationship between the parties, and the random nature of the automation device (such as the ability to randomly generate caller ID numbers), are all indicia of the random or sequential nature of the dialing device that gives rise to the inference at the pleadings stage that an ATDS was used. *See Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

55. Plaintiff is ignorant of the exact process by which the system(s) used by the Defendants operate other than drawing the reasonable inference and making the allegation that it stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls he received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

56. The communications received by Plaintiff demonstrate that they were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they sought to have him sign up for real estate investment services. The calls therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

57. Defendants made the automated calls. They either physically programmed the automatic dialer to dial them or instructed others to do the same.

58. The Plaintiff never provided his consent or requested these calls.

59. Defendants ignored multiple requests not to be called and indications that the Plaintiff was not interested.

60. Based on this fact, it is evident that Defendants do not maintain Do Not Call policies and procedures as required by law, nor do they maintain an internal Do Not Call list.

61. Plaintiff was harmed by these calls. He was temporarily deprived of legitimate use of his phone because his phone line was tied up during the automated calls and his privacy was improperly invaded. The Plaintiff was charged for the calls. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

## Legal Claims

### Count One:
### Violation of the TCPA's Prohibition Against Automated Calling With an Automatic Telephone Dialing System (ATDS)

62. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone number(s) of Plaintiff using an ATDS.

64. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

65. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from

violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

66. The Defendants' violations were wilful and/or knowing.

## Count Two:
## Violation of the Pennsylvania Telemarketer Registration Act
## 73 Pa. Cons. Stat. § 2241

67. By placing at least four telemarketing calls to the Plaintiff without registering as telemarketers under Pennsylvania law, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2243. Moreover, by failing to identify themselves in the messages, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2245.1.

68. This constitutes four violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 Pa. Cons. Stat. § 2246(a).

69. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's number, on the Pennsylvania Do-Not-Call registry, without registration.

70. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every call made to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. *See* 73 Pa. Cons. Stat. § 2246(a).

71. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

### Count Three:
### Violation of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

72. By placing at least four telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendant, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

73. This amounts to twelve violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without having a Do-Not-Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

74. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least six violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

75. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number

in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

76.  Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

77.  The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A.  Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B.  Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5).

C.  Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

D.  Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **May 12, 2022**

/s/
Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com